## LANE & WASSON CO. et al. v. WRIGHT et al.

No. 17817.    Opinion Filed July 19, 1927.

(Syllabus.)

**Master and Servant—Workmen's Compensation Law—Review of Award and Increase of Compensation Due to Injuries Becoming Permanent.**

Where the Industrial Commission has made an award to a claimant for temporary injuries and it later develops that instead of injuries being temporary the same have become permanent, thereby lessening the ability of the claimant to perform labor in the future, the Industrial Commission is authorized under section 7296, C. O. S. 1921, to review its award and increase the compensation previously awarded, limited, however, to the maximum rate of compensation fixed by statute for such class of injuries.

Action to review award of the State Industrial Commission in favor of J. E. Wright against Lane & Wasson Company and the Security Union Casualty Company. Affirmed.

Burford, Miley, Hoffman & Burford, for petitioners.

B. Moss, Edwin Dabney, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for respondents.

LESTER, J. This is an action to review an award made by the Industrial Commission.

It appears that on the 6th day of October, 1925, J. E. Wright, while employed in manual labor by the Lane & Wasson Company, suffered an injury to certain fingers of the left hand. Said J. E. Wright thereafter filed a claim for compensation before the Industrial Commission. On the 22nd day of January, 1926, a hearing on said claim was had before the Industrial Commission at Oklahoma City. On the 11th day of February, 1926, the Industrial Commission made an award in which the Commission found in part:

"1. That the claimant sustained an accidental injury arising out of and in the course of his employment with the respondent herein on the 6th day of October, 1925.

"2. That, as a result of said accidental injury, the claimant was temporarily totally disabled from performing his work until November 7, 1925."

On the 17th day of February, 1926, the said J. E. Wright filed before the Industrial Commission a motion to review the award made by the Commission on the 11th day of February, 1926, and in said motion the claimant stated and alleged in part:

"As a result of such injury to the left hand, the index finger thereof is completely ankylosed and wholly useless and will continue to be wholly useless."

On the 2nd day of March, 1926, hearing was commenced on the motion of the claimant to review the award on the grounds of the changed condition of the claimant, and on the 9th day of March, 1926, the Commission made an order in which it is recited:

"That the claimant has been paid compensation for a temporary total disability to November 7, 1925, and if there is any permanent partial disability, it cannot be determined at this time. The Commission is, therefore, of the opinion that this cause should be continued to 60 days for further consideration."

The Commission on the 19th day of August, 1926, resumed its hearing on said matter, and, at the conclusion thereof, made and rendered an order which in part is as follows:

"1. That claimant sustained an accidental injury arising out of and in the course of his employment with the respondent here-

in on October 6th, 1925, said injury being to the index finger of the left hand.

"2. And which injury has resulted in partial ankylosis of the middle joint of the finger and the severing of the tendons of the said finger and that he has no voluntary movement at the second joint or middle joint."

The order further provides that the claimant be paid the sum of $561 in addition to the amount theretofore awarded said claimant.

The petitioner on review in this court urges that the award made by the Commission on the 27th day of August, 1926, was not supported by any evidence and that the award is illegal and erroneous.

On the 2nd day of March, 1926, the following testimony was introduced:

"Q. What is the condition of your finger now? A. The condition is I have no use of it, it is stiff to an extent. There is no grip in the finger. This finger here (indicating the index finger of left hand)———— Q. Is that useless at this time? A. Absolutely. Q. Have you tried to use it? A. Yes, sir, and it hurts. * * * Q. Does it get better? A. No, sir; it just stays like it was."

On page 36 of the record Dr. L. M. Sackett testified that he had examined the index finger of the left hand:

"Q. Just state what you found. A. I find evidence of an old injury, the fracture of the bone and some laceration of the soft parts with a great deal of scar tissue following the wake of the injury, or the healing process. Q. Which finger, Doctor? A. Index finger. And it appears that these adhesions have bound the tendon down to such extent that it has limited its motion, just how much ankylosis there is I am unable to tell. The first joint is apparently all right, but the second one is the one that is stiff and has the appearance of a finger or joint that will never limber up again. It might with hard work or a lot of manipulation. The third joint is limited in motion so from ankylosis and from scar tissue; the second joint is limited in motion, but will improve considerably. My opinion is he will get fairly good use of the second joint. The ring finger apparently is normal now; the fifth finger the same."

On page 37 of the record the same physician testified further:

"Q. What is your judgment as to whether or not that index finger will improve, Doctor, and to what extent? A. It will improve somewhat in a considerable length of time, but it never will be a good normal useful finger again. The improvement will be very slight."

On cross-examination, at page 38 of the record, the same physician testified:

"Q. If the present loss of function is due to the tendon being cut open and scar tissue, I will ask you if it is possible or probable that with use some additional function will be gained? A. A very small amount, as I stated before: there will be a slight improvement in there—very silght. Q. It would be your opinion, then, that there will be but little change, if any, in the condition of this finger between to-day and January 22nd? A. Yes, sir."

On the 19th day of August, 1926, a hearing of the claimant, J. E. Wright, was resumed. Said J. E. Wright testified in part as follows:

"Q. What is the difference between that condition of the finger now and at the time you started to work after March 9th? A. None whatever. Just like it was— Q. State to the Commissioner whether you can use it at all or not? A. I haven't been ab'e to use it so far, and can't say whether I can use it or not, if permanent loss of use. Q. Have you been able to use the finger? A. No, sir. Q. Are you trying to use it every day? A. I use my hand and let the finger make the motion. Q. Have you been partly able to grip objects with it as time goes on, or is it just the same? A. The same."

T. B. Hinson testified in part as follows:

"Q. Dr. Hinson, do you know Mr. Wright? A. Yes, sir. Q. Have you ever had occasion to treat him professionally? A. Yes, sir. Q. But when he was injured on the 6th day of October, 1925, he came to you? A. Yes, whatever date that was he got this hand hurt— Q. What do you find the condition is now, Doctor? A. He had that finger crushed and it was infected. At this time he has got a finger there that I would say that is at least 50 per cent. permanent disability as far as this one finger is concerned. Q. Do you think he would be better off without that finger, Doctor? A. I believe he would he better off if this finger was off. It would give him a better hand. This is the first time I have seen him for six or eight months. Q. If you take it off at the second joint, would that help it any? A. I believe it would make him a better hand to take it off right there. Q. At the second joint from the end? A. Yes, sir. For this reason, this finger being stiff, unable to—he has not got the ability— it is likely to get the rest of his hand in trouble. He has got to watch that hand. If he does not do it, this finger will hang on to something and get his hand mashed."

We think under the evidence before the Commission that it was justified in making its award of August 27, 1926.

The petitioners in this court contend that

the Commission was without authority to review its former award in said cause.

Section 7296, C. O. S. 1921, provides:

"Upon its own motion or upon the application of any party in interest, on the-ground of a change in conditions, the Commission may at any time review any award, and, on such review, may make an award ending, diminishing, or increasing the compensation previously awarded, subject to the maximum or minimum provided in this act, and shall state its conclusions of fact and rulings of law, and shall immediately send to the parties a copy of the award. No such review shall affect such award as regards any money already paid."

In the case of United States Fidelity & Guaranty Co. et al. v. State Industrial Commission et al., 115 Okla. 273, 244 Pac. 432, this court, referring to section 7296, C. O. S. 1921, said:

"This section, authorizing a review of awards upon 'a change in conditions,' and the last paragraph of section 7290, subd. 3, C. S. 1921, provide for a 'reconsideration of the degree of such impairment by the Commission on its own motion or upon the application of any party in interest.' "

In the same case it is also said:

"Under the rule announced in the case of Whitehead Coal & Mining Co. v. State Industrial Commission, 86 Okla. 149, 208 Pac. 305, we think the question of limitation is decided adversely to the petitioners' contention in this case. The same rule has been followed in the case of Tidal Refining Co. v. Tivis, 91 Okla. 189, 217 Pac. 163, and other Oklahoma authorities, which hold that the jurisdiction of the Commission, after having once vested over a claim. is continuing, and the only limitation applicable to the Commission is in the maximum amount to be paid to the injured employee, etc. This authority, we think, clearly authorizes the review in this case, and disposes of the question of limitation. A somewhat similar question is involved in the case of Choctaw Portland Cement Co. v. Lamb, 79 Okla. 109, 189 Pac. 750."

In the instant case the Industrial Commission found, on the 11th day of February, 1926, that the claimant was temporarily disabled from performing his work. On the 2nd day of March, 1926, the Commission on motion to review its award on account of change in conditions found that it could not then be determined that the claimant suffered from permanent partial disability and continued the cause for 60 days. The cause, however, was not determined until August 27, 1926.

The Commission at its hearing on August 19, 1926, had the claimant and witnesses before it, and on account of a lapse of time and other circumstances the Commission was then the better enabled to determine the extent of the injuries to the claimant.

In the case of United States Fidelity & Guaranty Co. et al. v. State Industrial Commission et al., supra, this court said:

"The question of the sufficiency of evidence is a very close question in this case, but we feel, under the construction given the Workmen's Compensation Law by this court and the Supreme Courts of other states, wherein they hold that the law should be construed fairly and liberally in favor of the workman, and following this rule, that the award should be affirmed."

The petitioners here contend that the proceedings before the Commission, which resulted in an award of August 27, 1926, were not based on a change in conditions, but were in fact a rehearing of the award made on the 11th day of February, 1926.

We do not think the record supports this view. The record, in our judgment, shows that when the award was made on the 11th day of February, 1926, the Commission was of the opinion that the injuries to the fingers of the claimant were only temporary, but later it developed that the injuries to the finger had become permanent.

Where the circumstances of the case are such that a finding is had that the injuries to a claimant are only temporary and compensation is allowed on this basis, and later it develops that the injuries are permanent, it would be very unjust to deny compensation to the extent of the injuries suffered as measured by the rate of compensation fixed by statute.

In this case the total compensation under the award of February 11, 1926, amounted to $69.

In our judgment the evidence shows that the ability and capacity of the claimant to perform manual labor has been permanently dimished. One physician testified that the claimant's efficiency and safety would be increased by having the finger in question amputated.

The award of the Commission is affirmed.

BRANSON. C. J., MASON, V. C. J., and HARRISON. PHELPS, CLARK, RILEY, and HEFNER, JJ., concur.

Note.—See Workmen's Compensation Acts, C. J. p. 132, §151.